

# CHRIS DANIEL
# HARRIS COUNTY DISTRICT CLERK

01-15-00621-CV

**DATE 7/21/2015**

NOTICE OF APPEALS
ASSIGNMENT OF COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/21/2015 11:48:45 AM

CHRISTOPHER A. PRINE
Clerk

**TO:**     **1ST COURT OF APPEALS**

**From:**     **Deputy Clerk: MICHELLE LOPEZ**
**Chris Daniel, District Clerk**
**Harris County, T E X A S**

**CAUSE:**     **2012-24524**

**VOLUME** _____     **PAGE** _____     **OR**     **IMAGE #** **65135623**

**DUE** **8/19/2015**     **ATTORNEY** **09019000**

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE** **1ST**

**DATE JUDGMENT SIGNED:**     **4/21/2015**

**MOTION FOR NEW TRIAL DATE FILED:** **5/18/2015**

**REQUEST TRANSCRIPT DATE FILED**     **7/20/2015**

**NOTICE OF APPEAL DATE FILED**     **7/20/2015**

**NUMBER OF DAYS: ( CLERKS RECORD )** **120**

**FILE ORDERED:  YES** ☐ **NO** ☒ **IMAGED FILED:  YES** ☒ **NO** ☐

**CODES FOR NOTICE OF APPEAL:** **BC, C, O**

CHRIS DANIEL
Harris County, District Clerk

By: _/s/MICHELLE LOPEZ_
**MICHELLE LOPEZ, Deputy**

BC     NOTICE OF APPEAL FILED
BG     NOTICE OF APPEAL FILED – GOVERNMENT
C     JUDGMENT BEING APPEALED
D -     ACCELERATED APPEAL
OA     NO CLERK'S RECORD REQUEST FILED
O     CLERK'S RECORD REQUEST FILED (W/NOTICE OF APPEAL)
NA     AMENDED NOTICE OF APPEAL

## CAUSE NO. 2012-24524

| | | |
|---|---|---|
| ECOSORB INTERNATIONAL, INC., | § | IN THE DISTRICT COURT |
| d/b/a BIOCEL TECHNOLOGIES | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | 11th JUDICIAL DISTRICT |
| | § | |
| | § | |
| SUPPLY PRO, INC., and | § | |
| HARMON K. FINE, Individually, | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## NOTICE OF APPEAL

**TO THE HONORABLE JUDGE MIKE D. MILLER:**

1. Defendants SUPPLY PRO, INC., ("Supply Pro"), and HARMON K. FINE, ("Fine"), file this Notice of Appeal appealing the Final Judgment signed by this Court on April 21, 2015, (Exhibit 1).

2. Defendants Supply Pro and Fine appeal to either the First or Fourteenth Court of Appeals for the State of Texas.

3. Defendants Supply Pro and Fine are the parties affected by the Court's judgment signed April 21, 2015.

Dated: July 20, 2015.

Respectfully submitted,

WILLIAM F. HARMEYER & ASSOCIATES, P.C.

/s/William F. Harmeyer
William F. Harmeyer
State Bar No. 09019000
7322 Southwest Freeway, Suite 475
Houston, Texas 77074
Telephone: (713) 270-5552
Facsimile: (713) 270-7128
Email: wharmeyer@harmeyerlaw.com
*Attorneys for Defendants,*
*SUPPLY PRO, INC., and*
*HARMON K. FINE, Individually.*

Of Counsel:
Richard H. Edelman
State Bar No. 06413200
BARLOW JONES LLP
17225 El Camino Real, Suite 400
Houston, Texas 77058
Telephone: (281) 488-8440
Facsimile: (281) 488-6832
Email: rhe@edelmanoffice.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing instrument was forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure, on this the 20th day of July, 2015.

T. Ernest Freeman
Stephen G. Scholl
THE FREEMAN LAW FIRM, P.C.,
1770 St. James Place, Suite 120
Houston, Texas 77056
*Attorneys for Plaintiff*
*Ecosorb International, Inc.*
*Via Fax: (713) 973-1004*

Jonathan Stoger
JONATHAN STOGER LAW
2301 Morse Street
Houston, Texas 77019
*Co-Counsel for Plaintiff*
*Via Fax: (713) 522-1120*

Richard H. Edelman
BARLOW JONES LLP
17225 El Camino Real, Suite 400
Houston, Texas 77058
*Via Email: rhe@edelmanoffice.com*

/s/William F. Harmeyer
William F. Harmeyer

CAUSE NO. 2012-24524

| | | |
|---|---|---|
| ECOSORB INTERNATIONAL, INC. | § | IN THE DISTRICT COURT |
| d/b/a BIOCEL TECHNOLOGIES | § | |
| Plaintiff | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| SUPPLY PRO, INC., and | § | |
| HARMON K. FINE, Individually | § | |
| Defendants | § | 11th JUDICIAL DISTRICT |

FILED
Chris Daniel
District Clerk

APR 2 1 2015
Time:_____12:04pm_____
By_____
Harris County, Texas
Deputy

## FINAL JUDGMENT

On the 3rd day of February, 2015, came on to be heard the above-entitled and numbered cause and ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES, the Plaintiff, appeared in person and by attorney of record and answered ready for trial. SUPPLY PRO, INC., and HARMON K. FINE, Individually, the Defendant, appeared in person and by their attorneys of record and announced ready for trial. A jury having been previously demanded, a jury consisting of twelve (12) qualified jurors was duly empaneled and the case proceeded to trial.

At the conclusion of the evidence, the Court submitted the questions of fact in the case to the jury. The Charge of the Court and the verdict of the jury are incorporated for all purposes by reference. Because it appears to the Court that the verdict of the jury was for the Plaintiff and against the Defendant, judgment should be rendered on the verdict in favor of the Plaintiff and against Defendant.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiff, ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES has judgment against Defendants, SUPPLY PRO, INC., and HARMON K. FINE, for actual damages in the sum of $ 783,424.05, said sum representing $ 784,718.25 awarded by the jury, minus an

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

agreed credit in the amount of $1,297.20.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiff, ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES has judgment against Defendant, SUPPLY PRO, INC., for exemplary damages in the sum of $800,000.00.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiff, ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES has judgment against Defendant, HARMON K. FINE for exemplary damages in the sum of $1,000,000.00.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that all taxable costs of Court expended or incurred in the cause by Plaintiff, ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES are adjudged against Defendant, SUPPLY PRO, INC., and HARMON K. FINE.

IT IS FURTHER ORDERED, ADJUDGED and DECREDED that Plaintiff, ECOSORB INTERNATIONAL, INC. d/b/a BIOCEL TECHNOLOGIES has judgment against Defendant, SUPPLY PRO, INC., and HARMON K. FINE, for prejudgment interest in the amount of 118,266.64 calculated at the rate of Five Percent (5%) percent from April 27, 2012 (the date suit was filed) until the date preceding the entry of this Final Judgment.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the total amount of the judgment here rendered shall bear interest at the rate of (5%) percent compounded annually from the date of this Final Judgment until paid.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that all writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

All other relief not expressly granted in this Final Judgment is DENIED.

SIGNED this _____ day of __APR 2 1 2015__ , 2015.

_____
JUDGE PRESIDING

3

## CAUSE NO. 2012-24524

| | | |
|---|---|---|
| ECOSORB INTERNATIONAL, INC. | § | IN THE DISTRICT COURT |
| d/b/a BIOCEL TECHNOLOGIES | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| SUPPLY PRO, INC. and | § | |
| HARMON K. FINE, Individually, | § | |
|     Defendants | § | 11th JUDICIAL DISTRICT |

### DEFENDANTS' POST-JUDGMENT MOTIONS

Defendants Supply Pro, Inc. and Harmon K. Fine submit the following: (1) motion for judgment notwithstanding the verdict ("JNOV") or to disregard individual jury findings; (2) motion to modify the Judgment; and (3) motion for new trail.

## I.      Background

### A.      Underlying transactions

Supply Pro manufactures absorbent floating boom that is used to contain and clean-up offshore oil spills.  To perform this function, the material inside the boom must absorb oil, but not water.  Historically, the material inside the boom that provides this floating and absorbent character has been scrap polypropylene ("polyscrap").

Following the BP rig explosion in April of 2010, Supply Pro was requested to provide absorbent boom for the resulting oil spill.  Because there was not enough polyscrap material to produce the boom needed for the spill, boom manufacturers like Supply Pro needed an alternative boom material that would allow boom to be produced without the increased cost of non-scrap polypropylene.

Biocel manufactured and sold various fiber products made from recycled cardboard. Biocel claimed that one of these products, "K-Sorb," had the attributes needed for absorbent boom. On May 13, Larry Svoboda, a Vice President for sales and marketing at Biocel, represented to Scott Mitchell, a salesman for Supply Pro, that: (1) the finest Boom manufacturers used Biocel's Hydrophobic Fiber as a filler; (2) it was excellent floating on water and absorbing oil; and (3) Biocel's K-Sorb, a densified version of its Hydrophobic Fiber, would absorb 4-5 times its weight. P 3.

By May 21,[1] Supply Pro had begun submitting purchase orders ("POs") to Biocel for K-Sorb. P 5. In mid-June of 2010, BP (through Supply Pro's distributor, Pacific Environmental) requested Supply Pro to produce 10 truckloads of boom per day. To achieve that level of production, Supply Pro invested heavily in expanding its facilities and equipment and increased its employees from 50 to 350. By June 29, Supply Pro was expecting to produce and ship five truckloads of boom per day in early July, then ten per day by the middle of July. P 18.

In late May or early June, boom manufactured by New Pig using Biocel's hydrophobic fiber sank in the Gulf of Mexico. Biocel claimed that it thereafter retreated all of its K-Sorb to make it more hydrophobic. On July 7, in response for Mitchell's requests for quality control information and specifications, Svoboda represented that Biocel ran "QC" tests on each batch of K-Sorb, the reports tie to the customer shipping orders, and the results show that each batch meets their specifications. P 21. Ongoing production was monitored

---

[1]    Henceforth, all dates referred to are in 2010 unless otherwise indicated.

by floating test, hydrophobic application process by weight and meter gauge and each batch was tested after production to verify that each batch meets their specifications. P 21.

On July 11, Biocel emailed Supply Pro that it had "many new customers that are booking more than their needs," and that "due to the extreme production demands created by the oil containment crisis in the Gulf of Mexico, all orders for our hydrophobic materials" would, among other things, be "non-cancellable, 'take or pay.'" P 23-24.[2] However, this was not an offer or acceptance of an offer, and Supply Pro never communicated anything agreeing to this email.

In addition, Biocel's internal documents (P 125) and Svoboda's testimony demonstrated that Biocel had no other significant buyers for its hydrophobic materials at that time. Svoboda admitted that Supply Pro was the only extreme demand referred to in the email, even though it had not yet submitted either of its blanket purchase orders.[3] The non-cancellation / take or pay term was thus proposed to Supply Pro under false pretenses.

On July 13, Supply Pro submitted blanket purchase order no. 41724 (the "July 13 PO") for 31,680 bags (28 truckloads) of K-Sorb. P 26.[4] As with Supply Pro's other purchase

[2]    As Steve Kempe testified, purchase orders could generally be cancelled unless there were terms prohibiting it.

[3]    Unlike Supply Pro, Biocel did not make significant capital outlays to meet the increased demand for its products during this period. Therefore, its proposed non-cancellation / take or pay term was not needed to recoup any such costs.

[4]    This PO reflects a unit cost of $14,572.80, which applies to the unit of a truckload, rather than a bag. However, the total price on the invoice, $461,666,304.00 is the incorrect product of multiplying that unit cost for a truckload by the number of bags ordered, rather than the number of truckloads.

orders, it did not include any terms and conditions besides the product, quantity, price, and net 30 days payment terms.

On July 16, Biocel issued an order acknowledgment (the "July 16 OA") for the July 13 PO. P 30. However, the July 16 OA, specified only 1,056 bags (one truckload) of K-Sorb. P 30. In addition, despite having allegedly retreated all of its K-Sorb and the assurances in Svoboda's July 7 emails, Biocel added the following statement to the "boilerplate" provisions on the back of the July 16 OA: "seller makes no specification or representation as to the buoyancy of its products." P 30. This statement had not been included in Biocel's prior OAs (P 27), and Biocel had given Supply Pro no notice that it was adding this to its terms and conditions, let alone any explanation that would have enabled Supply Pro (or Pacific Environmental or BP) any opportunity to decide whether to nevertheless purchase the K-Sorb with this disclaimer. This OA also proposed that the order would be non-cancellable / take or pay.

On July 15, 2010, BP capped the leaking well, but the massive clean-up was expected to continue until November of that year. However, on July 23-25, Tropical Storm Bonnie unexpectedly dispersed the remaining oil from the spill, although it was not immediately apparent that this had occurred. In the late afternoon on July 27, BP instructed Supply Pro to reduce its production from ten truckloads of boom per day to three, but cautioned that circumstances could change quickly as the oil moved or reached land areas. P 34.

On July 29, Supply Pro submitted PO no. 41778 (the "July 29 PO") to Biocel for the 29,568 bags (28 truckloads) of K-Sorb that would be needed to meet the requested three

4

truckload production level. P 37. On July 29, Biocel issued an OA (the "July 29 OA") for Supply Pro's July 13 PO. P 38. This OA also included the proposed non-cancellation / take or pay term and the buoyancy disclaimer. P 38. Biocel had still not mentioned or explained the buoyancy disclaimer to Supply Pro, and did not do so subsequently.

On July 30, BP instructed Supply Pro to stop all production, but acknowledged that production could resume at a later time. P 34. On August 4, 2010, Supply Pro sent Biocel notices that it was cancelling the remainder of its July 13 PO and all of its July 29 PO. P 25, 36.

In reply to this cancellation, Svoboda emailed Fine on August 5:

Our terms of sale require: (1) all orders are non-cancelable; (2) full payment is required for all finished items, whether or not delivered; and (3) partial payment is required on canceled orders that are in process of production, based on percentage of completion.

P 42. This was consistent with the cancellation provisions in the printed terms and conditions on the back of all of Biocel's OAs (P 27, 30, 38), but did not suggest that Biocel expected any payment for cancelled bags that had not begun production.

In reply to this email, Harmon Fine emailed Steve Kempe on August 5 that they needed to talk about this. At lunch on August 11, Kempe and Fine discussed a possible workout agreement. By then, Supply Pro had paid for 25 truckloads of K-Sorb that had been delivered on the July 13 PO (roughly $364,320), as well as for the K-Sorb that had been ordered under previous purchase orders. On August 13, Kempe sent Fine an email (the "Aug. 13 email"), proposing terms that were based on their discussion "*and some subsequent*

5

*thinking*." P 46. As relevant to the relief awarded in the judgment, the substance of those terms was as follows:

1. Supply Pro and Biocel would continue trying to sell the remaining 6912 bags of K-Sorb until February 1, 2011, after which Supply Pro would be invoiced for the remaining inventory.

2. Biocel would return the unused raw material to its vendor for a $12,750 restocking fee.

3. If Supply Pro was later compensated for terminating its boom deliveries, it would so notify Biocel and compensate Biocel in the same proportion as Supply Pro was compensated.

P 46.

On August 16, Fine sent Kempe an email (the "Aug. 16 email"), replying to the Aug. 13 email. P 46. In substance, that email *only*: (1) authorized Biocel to return the chemical to the manufacturer and charge Fine $12,750; and (2) agreed to purchase the balance of the 6912 bags of K-Sorb remaining after six months. P 46. In less than ten minutes, Kempe sent an email, replying that the return process was underway. P 46. On August 27, Kempe emailed Fine that the raw material return had been completed. Biocel never objected to Fine accepting only these two terms of the proposed August 13 email.

On September 4, after negotiations between BP and Pacific Environment, and them between the partners of Pacific Environmental, Supply Pro received a check for $1,592,448.00 (P 55) from Pacific Environmental to defray the costs of expanding its production facility without being able to sell the volume boom necessary to recoup those costs. On December 1, Fine advised Kempe that Supply Pro still had 21 truckloads of boom

6

in its warehouse and $1.7m of feedstock that would probably never be used. None of the remaining 6912 bags of K-Sorb were ever sold, and Supply Pro did not pay for them.

## B. Jury Findings

In response to charge questions 1-13, the jury found that:

1. The parties agreed that the five listed provisions from the August 13 email would be part of the workout agreement.

2. Supplied Pro failed to comply with the workout agreement.

3. Biocel and Fine agreed that Fine would personally guaranty the workout agreement.

4. Fine failed to comply with the personal guaranty with Biocel.

5. Supply Pro and Fine committed fraud against Biocel.

6. The damages resulting from the failure to comply were:

   a. The price of the 6912 bales on February 1, 2011 that Biocel was unable to resell at a reasonable price: $95,385.60.

   b. Commercially reasonable and necessary charges for the custody and care of the goods stored by Biocel: $303,815.65.

   c. Biocel's proportionate share of compensation received by Supply Pro from its distributor for the termination of the boom deliveries: $385,517.00.

7. The damages from the fraud were:

   a. The price of the 6912 bales on February 1, 2011 that Biocel was unable to resell at a reasonable price: $95,385.60.

   b. Commercially reasonable and necessary charges for the custody and care of the goods stored by Biocel: $303,815.65.

   c. Biocel's proportionate share of compensation received by Supply Pro

7

from its distributor for the termination of the boom deliveries: $385,517.00.

     d.    The unpaid amounts due under the purchase orders dated July 13, 2010 and July 29, 2010, issued by Supply Pro to Biocel: $480,902.60.

8. By clear and convincing evidence, the harm to Biocel resulted from fraud.

9. A reasonable fee for the necessary services of Biocel's attorney was:

     a.    For preparation and trial: $637,455.

     b.    For and appeal to the Court of Appeals: $42,500.

     c.    For an appeal to the Supreme Court of Texas: $32,500.

10. Biocel's proportionate share of compensation received by Supply Pro from Supply Pro's distributor for the termination of the boom deliveries was $385,517.00.

11. The unpaid amounts due under the purchase orders dated July 13 and July 29, 2010 issued by Supply Pro to Biocel were $480,902.60.

12. The exemplary damages against Supply Pro were $800,000.00.

13. The exemplary damages against Fine were $1,000,000.00.

On April, 21, 2015, the Court entered Judgment on these findings.

## II. Motion for JNOV or to Disregard Jury Findings

### A. Legal Sufficiency Standards

A trial court may grant a JNOV if there is no evidence to support one or more of the jury findings necessary to liability. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *see* Tex. R. Civ. P. 301. A no evidence (legal sufficiency) challenge will be sustained when the record confirms either: (1) a complete absence of a vital fact; (2) the court is barred by rules

8

of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014).

A jury's answer may be disregarded only if it has no support in the evidence or is immaterial. Tex. R. Civ. P. 301; *Southeastern Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999). A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or it has been rendered immaterial by other findings. *Id.* The legal sufficiency of the evidence is measured against the charge submitted to the jury where the opposing party did not object to the charge. *See Burbage v. Burbage*, 447 S.W.3d 249, 260 (Tex. 2014).

The interpretation of an unambiguous contract is a question of law for the court. *Moayedi v. Interstate 35 / Chisam Road, L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). In construing a contract, a court does not consider only the parts favoring one party and disregard the remainder as that would render the latter meaningless. *City of Keller v. Willson*, 168 S.W.3d 802, 811 (Tex. 2005). Nor may courts rewrite contracts or insert terms that the parties could have bargained for but did not.[5] Whether a contract comes within the Statute of Frauds is also a question of law. *National Property Holdings, L.P., v. Westergren*, 453 S.W.3d 419,

---

[5]      *Ritchie v. Rupe*, 443 S.W.3d 856, 891 (Tex. 2014); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

9

426 (Tex. 2015) (holding that partial performance exception did not apply).

## B.  Question 1: Terms of the Workout Agreement

The evidence is legally insufficient to support the jury's answer to charge question 1. Among other reasons,[6] this is because: (1) there is no evidence that Supply Pro agreed to all of the terms of the alleged workout agreement listed in question 1; and (2) the terms not included in Fine's August 16 email are unenforceable under the statute of frauds as a matter of law.

A contract for the sale of goods for $500 or more is not enforceable unless there is a sufficient writing that is signed by the party against whom enforcement is sought. Tex. Bus. & Com. Code Ann. § 2.201(a) (West 2009). Between merchants, this requirement is satisfied against a party if, among other things, a sufficient written confirmation is received by that party unless that party gives written notice of objection to its contents within ten days after it is received. *Id*. § 2.201(b).

In this case, the oral agreement allegedly reached between Kempe and Fine over lunch on August 11, 2010 was a contract for the sale of goods for over $500 and thus subject to the Statute of Frauds. Kempe's Aug. 13 email was not a sufficient written confirmation of any such agreement because it expressly acknowledged that it was based on not only the

---

[6]  The contentions supporting defendants' legal sufficiency challenges to the jury findings are not limited to those specifically set forth in these motions because defendants will not have had an adequate opportunity to fully review and analyze the reporter's record by the deadline for filing these motions. *See, e.g., Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387-88 (Tex. 2008).

discussion but also "some subsequent thinking." Although Kempe testified which parts of the email had been based on subsequent thinking, this alleged oral agreement is equally subject to the Statute of Frauds. Even if the August 13 email had been a sufficient written confirmation, Fine's August 16 email was a timely written notice of his objection to the contents of the August 13 email by specifying the parts of the August 13 email with which Fine agreed, and thus the remainder with which he did not. Because these two emails are unambiguous, they must be construed as a matter of law. To interpret Fine's August 16 email as accepting the remaining terms of the August 13 email would simply render the entire content of the August 16 email meaningless.

There is also no evidence that Supply Pro ever agreed to the non-cancellation / take or pay term in Biocel's OAs. Under the Uniform Commercial Code ("UCC"), a definite expression of acceptance or written confirmation generally operates as an acceptance of an offer even though it states terms that are additional to or different from those offered. Tex. Bus. & Com. Code Ann. § 2.207(a) (West 2009). The additional terms are construed as proposals for addition to the contract. *Id*. § 2.207(b).

Between merchants, such terms become part of the contract unless, among other things, they materially alter it. *Id*. § 2.207(b)(2). In this context, where the conduct of the parties recognize the existence of a contract, but their writings fail to establish it, the terms of the contract consist of the terms on which the parties' writings agree, together any supplementary terms incorporated under other provisions of the UCC. *Id*. § 2.207(c).

In contrast to the foregoing provisions of section 2.207, the UCC Statute of Frauds is

11

satisfied between merchants if, among other things, a sufficient written confirmation is received by a party unless written notice of objection to its contents is given within ten days after it is received. *Id.* § 2.201(b). Importantly, however, the only effect of such a confirmation "is to take away from the party who fails to answer the defense of the Statute of Frauds . . . ." *Id.* cmt 3. It thus does not establish terms of the contract or override the effect of section 2.207 in doing so. *See id.*

In this case, Biocel's order acknowledgments each contained several paragraphs of pre-printed terms and conditions that were not included in Supply Pro's purchase orders. In addition to those terms and conditions, Biocel's last two order acknowledgments, dated July 16 and 29, 2010 stated, as relevant to these motions:

> Due to the extreme production demands created by the oil containment crisis in the Gulf of Mexico, all orders for our hydrophobic materials are subject to the following special terms:
>
> 1.　　Orders are non-cancellable, "take or pay".

This non-cancellation / take or pay term was a material alteration of Supply Pro's purchase orders, which did not contain any such non-cancellation term (and were not non-cancelable without such a term). Moreover, because the take or pay requirement was not a supplementary term incorporated under any other applicable provisions of the UCC, the agreement of the parties consisted of the terms on which the writings of the parties agreed, which did not include the non-cancellation / take or pay term. Even if the non-cancellation / take or pay term had been applicable, it would have applied to only one truckload under the July 13 PO because that was all that was included in the July 16 OA.

12

Even if the non-cancellation / take or pay term had been part of the parties agreement, it was unenforceable under the statute of frauds, as a penalty provision, and for being unconscionable.

### C.     Question 2: Breach of the Workout Agreement

The evidence is legally insufficient to support the jury's answer to question 2. Among other reasons, any breach of the workout agreement was excused by equitable estoppel based on Biocel's: (1) failure to disclose material information concerning the buoyancy of the fiber; (2) attempt to disclaim the buoyancy of K-Sorb upon which Supply Pro had relied in submitting its purchase orders, while failing to advise Supply Pro of the attempted disclaimer or Biocel's reasons for proposing it; and (3) misrepresentations concerning the demand for its hydrophobic fiber products in proposing that Supply Pro's purchase orders be subject to a non-cancellation / take or pay term due to that demand.

### D.     Question 3: Guaranty of the Workout Agreement

The evidence is legally insufficient to support the jury's answer to question 3. Among other reasons, the guaranty is unenforceable for failing to satisfy the statute of frauds and does not reflect that the workout agreement was within the scope of the guaranty. The provisions of the alleged guaranty are incomplete, and paragraphs 9 and 15 of the guaranty form preclude extrinsic evidence to contradict or modify the terms of the document. P 123.

### E.     Question 4: Breach of the Guaranty

The evidence is legally insufficient to support the jury's answer to question 4.

### F.     Question 5: Fraud

13

The evidence is legally insufficient to support the jury's answer to question 5. Among other reasons, there is no evidence that Supply Pro or Fine made any material misrepresentation in the form of: (1) a false statement of fact; (2) a promise of future performance with an intent not to perform; (3) a statement of opinion based on a false statement of fact; (4) a statement of opinion that Supply Pro or Fine knew to be false; or (5) an expression of opinion that was false while claiming or implying to have special knowledge of the subject matter of the opinion. Nor is there any evidence that Supply Pro made any misrepresentation with: (1) knowledge of its falsity or as a positive assertion without any knowledge of the truth; or (2) the intention that it should be acted on by the other party. There is also no evidence that Biocel relied on any such misrepresentation or suffered any injury therefrom.

The fraud alleged by Biocel was that: (1) Supply Pro promised it would perform its obligations under the workout agreement with an intent not to perform; (2) Supply Pro falsely represented that it was in a precarious financial position due to the sudden evaporation of the market for absorbent boom and that it had no expectation of receiving compensation from BP for the cancellation of boom purchases; and (3) Supply Pro failed to disclose that it received approximately $1.6 million from its customers to defray its expenses and damages. Pl.'s Second Am. Pet. 6-7.

As to the third ground, Question 5 did not authorize the jury to find fraud based on a failure to disclose, and particularly in that the Court sustained Supply Pro's objection to Biocel's proposed definition / instruction on that ground. *See* PJC 105.4. Therefore, the

14

fraud finding cannot be sustained based on a failure to disclose, such as the third ground alleged.

Concerning the second ground, the alleged phrase, "precarious financial situation" was far too indefinite an expression to serve as an actionable basis for fraud. In addition, to have induced Biocel to enter into the workout agreement, this statement must have been made by August 13, when Kempe sent Fine the email proposing the terms of the that agreement. There was no evidence that Fine knew at that time that BP would pay Supply Pro anything further, let alone how much. There is also no evidence that, even with the subsequent cancellation payment, Supply Pro would nevertheless *not* be in a precarious financial position, considering the expenditures it had made and the financial obligations it had undertaken to ramp up its production capability, and the uncertainty surrounding the future resolution of the resulting financial issues. Because the evidence wholly failed to establish Supply Pro's financial position at the time of the workout agreement, it was legally insufficient to establish that the alleged statement was false. Moreover, if Biocel's version of the workout agreement had been applicable, then Biocel would not have been damaged by any statement that Supply Pro had no expectation of receiving any payment from BP because Biocel's version of the workout agreement specifically compensated Biocel in the event that statement proved untrue.

With regard to the first alleged ground for fraud, the evidence is legally insufficient to prove that Supply Pro entered into the workout agreement with an intent not to perform it. Among other reasons, Supply Pro never agreed to the proportionate compensation

15

requirement that Biocel sought to include in the workout agreement. Even if that requirement had become part of the workout agreement due to Supply Pro's failure to object to it, as Biocel contends, there is no legal authority holding that fraud liability can be based on an intent not to perform an obligation that is only included in an agreement constructively based on a party's failure to object to it under the UCC Statute of Frauds provision.

In addition, there is no direct evidence of an intent by Supply Pro not to perform the workout agreement at the time it was entered, and there is no logical bridge between any subsequent occurrences and a conclusion that Supply Pro did not intend to perform the workout agreement at that time. *See Ikon Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 131 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).

The alleged intent not to perform the workout agreement was also negated by Supply Pro's partial performance of the workout agreement by paying the $12,750 fee for Biocel to return the K-Sorb chemicals to the supplier. *See, Bank One, Tex. N.A. v. Stewart*, 967 S.W.2d 419, 445-46 (Tex. App.–Houston [14th Dist.] 1998, pet. denied).

In addition, there was no evidence that Supply Pro committed fraud against Biocel apart from any conduct by Fine. That is, there was no allegation or evidence that anyone else acting on Supply Pro's behalf committed any fraudulent conduct. To whatever extent Supply Pro could be vicariously liable for the conduct of Fine under a respondeat superior or similar theory, there is no basis for Supply Pro to be held *independently* liable for fraud. Therefore, even if there had been evidence of fraud by Fine, there was no evidence to support the jury's independent finding of fraud by Supply Pro.

16

## G. Question 6: Contract Damages

The evidence is legally insufficient to support the jury's answers to questions 6. Among other reasons, concerning question 6b: (1) there is no evidence that Biocel paid or incurred the amount of storage charges awarded or that those charges, even if paid or incurred, would have been commercially reasonable; and (2) storage charges exceeding three times the purchase price of the goods being stored were commercially unreasonable as a matter of law. After it became apparent that Supply Pro could not use the K-Sorb, it could not be resold, and was essentially worthless, Biocel should have mitigated its damages by either disposing of or destroying the material, rather than simply letting it continue to incur storage charges for over three years thereafter.

Concerning question 6c, among other reasons, Biocel's proposed proportionate compensation provision was not part of the workout agreement, as discussed above in connection with question 1. It thus could not have been breached or be the basis for a damage recovery.

## H. Question 7: Fraud Damages

The evidence is legally insufficient to support the jury's answer to question 7. Among other reasons, neither Supply Pro nor Fine committed any fraud, let alone any that caused Biocel to suffer any damages. Concerning question 6a, there is no evidence that this amount of damage was caused by any fraud concerning the workout agreement. If anything, any damage on the 6912 bales would have already been suffered before the workout agreement was ever discussed.

17

In addition, the same deficiencies apply to the amounts awarded in question 7b and 7c as to those awarded in questions 6b and 6c, discussed in the preceding section. Similarly, because the proposed proportionate compensation provision was not part of the workout agreement, it could not have been induced by fraud.

Concerning question 7d, among other reasons, there was no evidence (or even allegation) of any fraud concerning the purchase orders; and no evidence that the unpaid amounts under the purchase orders resulted from any fraud by Supply Pro or Fine.[7] If anything, any damage for those amounts would have already been suffered before the workout agreement was even discussed. In addition, Supply Pro did not agree to Biocel's proposed non-cancellation / take or pay term on which Biocel based its calculation of the amount awarded. There was thus no basis upon which the unpaid amounts under the purchase orders could have properly been awarded based on the evidence and charge submitted, and question 7d should be disregarded.

## I.     Question 8: Harm from the Fraud

The evidence is legally insufficient to support the jury's answer to question 8. Among other reasons, there is no evidence of any fraud by Supply Pro or Fine, or of any harm from any such fraud. In addition, as discussed above concerning question 5, there is no evidence or basis for an independent finding of harm against Supply Pro.

---

[7]     There were also no charge questions on the terms of the purchase orders or whether they were breached; and the unpaid amounts under the purchase orders were correctly not submitted as an element of damage in question 6, concerning damages from breach of the workout agreement.

18

**J.      Question 9: Attorney's Fees**

The evidence is legally insufficient to support the jury's answer to question 9.

**K.      Question 10: Proportionate Compensation**

The evidence is legally insufficient to support the jury's answer to question 10. Among other reasons, Biocel's proposed proportionate compensation provision was not part of the workout agreement, as discussed above concerning question 1. In addition, this question was not predicated on any liability finding (to which Supply Pro objected), so there is no basis to award the damage amount provided in this question as having resulted from any conduct by Supply Pro or Fine. Moreover, because this question and the jury's answer to it were the same as for questions 6c and 7c, this question and answer were immaterial and should be disregarded.

**L.      Question 11: Amounts Due Under the Purchase Orders**

The evidence is legally insufficient to support the jury's answer to question 11. Among other reasons, Biocel's proposed non-cancellation / take or pay term on which Biocel based its calculation of the amount awarded was not part of the agreement between the parties. In addition, there were no liability questions on the terms of the purchase orders or whether they were breached, such that damages arising from non-payment of the amounts due under the purchase orders could be awarded. Similarly, this question was not predicated on any other liability finding (to which Supply Pro objected), so there is no basis to award this damage amount as having been caused by any conduct by Supply Pro or Fine. Moreover, because this question and the jury's answer to it were the same as for question 7d,

this question and answer were immaterial and should be disregarded.

**M.      Questions 12 and 13: Exemplary Damages Against Supply Pro and Fine**

The evidence is legally insufficient to support the jury's answers to questions 12 and 13 and the Court's award of exemplary damages based on those findings. Among other reasons, as stated above, there is no evidence of fraud by Supply Pro or Fine and no evidence of any damages or harm resulting from any such fraud.

In addition, separate exemplary damages were awarded against Supply Pro and Fine even though the same conduct by Fine would have been the basis for both. This is because there was no allegation or evidence of any fraudulent conduct by any Supply Pro employee or officer besides Fine. This constitutes an impermissible double recovery of exemplary damages. To whatever extent Supply Pro could be vicariously liable for the conduct of Fine under a respondeat superior or other agency theory, Supply Pro could only be liable for the *same* damages as were caused by Fine, not separate damages, where no fraud was alleged or committed by any other person acting on Supply Pro's behalf. Therefore, there was no evidence to support an independent award of exemplary damages against Supply Pro.

In addition, the exemplary damages awarded were excessive under constitutional standards, including the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. *See generally Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305-08 (Tex. 2006); *Bunton v. Bentley*, 153 S.W.3d 50, 53-54 (Tex. 2004); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 48-54 (Tex. 1998). Under this constitutional standard, the relevant factors are: (1) the

20

degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded; and (3) the relative size of civil penalties imposed in comparable cases. *See Tony Gullo Motors*, 212 S.W.3d at 308; *Bunton*, 153 S.W.3d at 53.

In this case, with regard to the reprehensibility of the defendants' conduct, the alleged fraud did not cause physical harm, threaten health or safety, or cause or threaten financial ruin. *See Tony Gullo Motors*, 212 S.W.3d at 308. Instead, as discussed above, the fraud allegations were based mostly on obligations to which neither Supply Pro or Fine ever affirmatively agreed, but instead which Biocel has sought to unilaterally impose based on the UCC Statute of Fraud provision, concerning a party's failure to object to a written confirmation of an agreement. *See* Tex. Bus. & Comm. Code Ann. § 2.201(b).

As to the second factor, most of the fraud damages claimed by Biocel were for goods it never produced and for which it incurred no cost and for excessive storage charges that were more than three times greater than the contract price of the goods being stored, which were essentially worthless. Much of Biocel's damages arose from Biocel's proposed non-cancellation / take or pay provision, which was not part of the parties' agreement and which Biocel had sought to impose based on a misrepresentation of the demand for its K-Sorb product. Similarly, most of Biocel's claimed fraud damages would, if anything, have been suffered before the workout agreement was even discussed.

Regarding the third factor, defendants have found no comparable cases in which civil penalties or punitive damages have been awarded. Under these circumstances, there was no

21

evidence to support the awards of exemplary damages, and the awards were excessive under constitutional standards.

## III. Motion to Modify the Judgment

### A. Prejudgment Interest

The period from April 27, 2012 (when the lawsuit was filed) to April 21, 2015 (the date the Judgment was signed) was six days less than three years (1089 days), or 2.984 years. Prejudgment interest, accruing on the actual damages of $783,421.05 at 5% for 2.984 years, would come to $116,886.42, rather than the $118,266.64 awarded in the Judgment. Therefore, if the amount of the Judgment is not otherwise reduced, defendants ask that the judgment be modified to reflect this lower amount of prejudgment interest.

## IV. Motion for New Trial

### A. Charge Error

The Court erred in refusing defendants' requests for questions, instructions, and definitions on fraudulent inducement and equitable estoppel because the evidence raised fact issues on whether the original purchase orders, the terms and conditions submitted by Biocel, the personal guaranty, and the workout agreement were induced by fraud. Among other things, Biocel: (1) sought to impose its non-cancellation / take or pay term based on a misrepresentation concerning the demand it was experiencing for its K-Sorb product; (2) failed to disclose that K-Sorb it sold to New Pig Corporation failed when deployed in oil booms to remediate the BP oil spill, and, more importantly, the effect this failure would have on the parties' ability to resell any unused fiber or boom containing it; (3) attempting to

22

assert a disclaimer of responsibility for the buoyancy of the product in the fine print of its order acknowledgments without bringing those material changes to the attention of Supply Pro or explaining its reason for doing so. In addition, Biocel engaged in this conduct while it knew Supply Pro was focused on rapidly expanding its production capacity to address the emergency presented by the BP oil spill.

The Court also erred in refusing defendants': (1) requested question concerning the ambiguity of the guaranty agreement; (2) request to submit the question on contract damages before the question on fraud liability; (3) request to include the word, "incurred" after the word "charges" in the damage questions on storage charges; (4) objection to submission of the proportionate share of compensation as the measure of damages, and proposed instruction 1, stating the measure from UCC section 2.708(a) in the damage questions; (5) objections to questions 10 and 11 as also being duplicative of previous questions, as not being predicated on any liability questions, and as being a comment on the weight of the evidence.

## B.     Excessive Damages and Request for Remittitur

To the extent there is legally sufficient evidence to support the award of actual or exemplary damages, or attorney's fees, the evidence is factually insufficient to support those awards, and those awards are excessive. *See* Tex. R. Civ. P. 324(b). In that event, defendants request a remittitur.

## Prayer

Based on the foregoing, defendants request the Court to grant defendants' post-judgment motions and: (1) enter a JNOV against those of Biocel's claims for which the

23

evidence is legally insufficient to support liability or damages; (2) disregard the individual jury findings which are not supported by legally sufficient evidence or are otherwise immaterial; (2) modify the judgment to correct the award of prejudgment interest; and (3) grant a new trial and/or remittitur on any remaining claims.

Respectfully submitted,

William F. Harmeyer
Texas Bar No. 09019000
wharmeyer@harmeyerlaw.com
WILLIAM F. HARMEYER & ASSOCIATES, P.C.
7322 Southwest Freeway, Suite 475
Houston, Texas 77074
Telephone: (713) 270-5552
Facsimile: (713) 270-7128

/s/ *Richard H. Edelman*
Richard H. Edelman
Texas Bar. No. 06413200
rhe@edelmanoffice.com
BARLOW JONES, L.L.P.
17225 El Camino Real, Suite 400
Houston, Texas 77058
Telephone: (281) 488-8440
Facsimile: (281) 488-6832

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

On **May 18, 2015** these **Motions** were eServed on the following attorneys for plaintiff Ecosorb International, Inc. d/b/a Biocel Technologies:

T. Ernest Freeman        ernest@thefreemanlawfirm.com
Stephen G. Scholl        steve@thefreemanlawfirm.com
Jonathan Stoger        jstoger@stogerlaw.com

/s/ *Richard H. Edelman*
Richard H. Edelman
rhe@edelmanoffice.com

```
JUC8H (NR4#)    JUSTICE INFORMATION MANAGEMENT SYSTEM      JUL 21, 2015(C1)
INT6510                   CIVIL CASE INTAKE             OPT: _____  -  INT
                       GENERAL PARTY INQUIRY            PAGE:   1  -    3

CASE NUM: 201224524__ PJN> __  TRANS NUM: _____ CURRENT COURT: 11  PUB? _
CASE TYPE: CONTRACT                     CASE STATUS: DISPOSED (FINAL)
STYLE: ECOSORB INTERNATIONAL INC (DBA BI VS SUPPLY PRO INC
=============================================================================
                     **** INACTIVE PARTIES ****
  PJN  PER/CONN COC  BAR      PERSON NAME            PTY   ASSOC. ATTY
  NUM   NUMBER                                       STAT
_     00004-0003 XPL 09019000 FINE, HARMON K          D   HARMEYER, WIL
_     00002-0003 XPL 09019000 SUPPLY PRO INC          D   HARMEYER, WIL
_     00001-0002 XDF 07431600 ECOSORB INTERNATIONAL INC (DBA  D  FREEMAN, THOM
_     00013-0001 AGT          TRANSOCEAN OFFSHORE DEEPWATER
_     00012-0001 AGT          TRANSOCEAN HOLDINGS LLC (LIMIT
_     00011-0001 AGT          BP CORPORATION NORTH AMERICA I
_     00010-0001 AGT          BP EXPLORATION AND PRODUCTION
_     00009-0001 3PD          TRANSOCEAN OFFSHORE DEEPWATER

==> (18) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.   5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH    11=HELP
```

```
CASE NUM: 201224524__ PJN> __  TRANS NUM: _____ CURRENT COURT: 11  PUB? _
CASE TYPE: CONTRACT                   CASE STATUS: DISPOSED (FINAL)
STYLE: ECOSORB INTERNATIONAL INC (DBA BI VS SUPPLY PRO INC
===========================================================================
                       **** INACTIVE PARTIES ****
  PJN   PER/CONN COC  BAR        PERSON NAME            PTY    ASSOC. ATTY
  NUM    NUMBER                                         STAT
_     00008-0001 3PD          TRANSOCEAN HOLDINGS LLC
_     00007-0001 3PD 19723875 BP CORPORATION NORTH AMERICA I   TAYLOR, THOMA
_     00006-0001 3PD 19723875 BP EXPLORATION AND PRODUCTION    TAYLOR, THOMA
_     00004-0002 3PP 09019000 FINE, HARMON K                   HARMEYER, WIL
_     00002-0002 3PP 09019000 SUPPLY PRO INC                   HARMEYER, WIL
_     00005-0001 AGT          SUPPLY PRO INC (A CORPORATION)
_     00004-0001 DEF 09019000 FINE, HARMON K                   HARMEYER, WIL
_     00003-0001 PLT 07431600 BIOCEL TECHNOLOGIES              FREEMAN, THOM

==> (18) CONNECTION(S) FOUND
1=ACTIVE       2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.    7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```

CASE NUM: 201224524__ PJN> __  TRANS NUM: _____ CURRENT COURT: 11  PUB? _
CASE TYPE: CONTRACT                      CASE STATUS: DISPOSED (FINAL)
STYLE: ECOSORB INTERNATIONAL INC (DBA BI VS SUPPLY PRO INC
============================================================================
                     **** INACTIVE PARTIES ****
  PJN   PER/CONN COC  BAR        PERSON NAME              PTY    ASSOC. ATTY
  NUM    NUMBER                                           STAT
_    00002-0001 DEF 09019000 SUPPLY PRO INC                   HARMEYER, WIL
_    00001-0001 PLT 07431600 ECOSORB INTERNATIONAL INC (DBA   FREEMAN, THOM


==> (18) CONNECTION(S) FOUND
1=ACTIVE     2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.  7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP